NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

———————————————————— :
: 
OZ NATURALS, LLC, a Florida limited :
Liability company, :
:
Plaintiff, :
v. :                                     Case No. 3:19-cv-12757-BRM-LHG
:
:
ANDREW LEVENKRON, et al., :
:                                            **OPINION**
Defendant. :
———————————————————— :

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is a Motion filed by Defendant Andrew Levenkron ("Levenkron" or "Defendant") to dismiss Plaintiff Oz Naturals, LLC's ("Oz" or "Plaintiff") Complaint ("Complaint") pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Motion to Dismiss"), or, alternatively, to stay the case pursuant to Federal Arbitration Act 9 U.S.C. § 1 *et seq.* or to compel arbitration (collectively, "the Motions"). (ECF No. 9.) Oz filed an Opposition to the Motions. (ECF No. 12.) Having reviewed the submissions filed in connection with the Motions and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause appearing, Defendant's Motion to Stay or Dismiss is **DENIED AS MOOT** and Defendant's Motion to Compel Arbitration is **DENIED.**

## I.    BACKGROUND

For the purposes of this Motion to Dismiss, the Court accepts the factual allegations in the Amended Complaint as true and draws all inferences in the light most favorable to Plaintiffs. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). Furthermore, the Court also

considers any "document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting *Shaw v. Dig. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)).

This matter stems from a business relationship between Levenkron and Oz. (ECF No. 1 ¶ 3.) Oz is a Florida company that focuses on the development, promotion, and sale of skin care products. (*Id.* ¶ 1.) Levenkron is a New Jersey resident and consultant on the formulation and production of "natural" beauty products—those without unnecessary synthetics, perfumes, or dyes. (*Id.* ¶ 2.)

In November 2015, Oz entered into a written agreement with Andrew Levenkron wherein Levenkron would advise on and manage the expansion of Oz's product line (the "Consultant Agreement"). (*Id.* ¶ 28.) Under the Consultant Agreement, Levenkron was responsible for developing products, launching new advertising campaigns, and other assignments agreed upon between the parties. (*Id.*)

In 2016—while working as an independent consultant for Oz—Levenkron introduced Oz to a Utah company called Luxfeel Group, LLC ("Luxfeel"), which had exclusive relationships with producers and manufacturers helpful to Oz's production. (*Id.* ¶¶ 3-4.) However, Oz discovered Luxfeel had allowed several synthetic ingredients to be added to Oz's "natural" products without Oz's knowledge or consent, thereby rendering Oz's advertising and labelling misleading. (*Id.* ¶ 6.) Additionally, throughout the business relationship, Luxfeel and Levenkron missed agreed-upon deadlines, causing Oz to miss product launch dates and decline in Amazon's sales rankings. (*Id.* ¶ 7.) Furthermore, Luxfeel and Levenkron repeatedly failed to pay vendors with funds previously paid to them by Oz for this express purpose. (*Id.*)

During the problems with Luxfeel, Levenkron formed his own company, Clean Culture Laboratories, LLC ("CCL"), and essentially took over Luxfeel's obligations to Oz and accepted Oz's corresponding payments. (*Id.* ¶ 8.) Additionally, Levenkron falsely represented to Oz that CCL was an extension of Luxfeel and was therefore a successor in interest as to Luxfeel's formulas and exclusive manufacturer and supplier agreements. However, Levenkron never disclosed his ownership of CCL to Oz and instead used confidential pricing information he gained through his role as a consultant to benefit CCL. (*Id.* ¶ 9.) Furthermore, misconduct continued under CCL as CCL missed deadlines, allowed products to fall out of stock, changed formulations without approval, and failed to pay vendors. (*Id.* ¶ 11.)

Despite these problems, on May 3, 2017, Oz and CCL entered into a mutual non-disclosure and non-circumvention agreement (the "NCA") whereby the parties agreed to refrain from interfering with or circumventing each other's industry contacts. (ECF No. 9-2, Ex. B at 5-7.) The NCA contains an arbitration clause providing:

> This Agreement shall be governed and construed in accordance with the laws of the State of New Jersey. All parties agree to first settle any controversy or claim arising out of or relating to this Agreement, or breach thereof through legal arbitration, with hearings to take place in a mutually agreed upon location.

(*Id.* at 6.)

Additionally, on January 26, 2018, Oz and CCL entered into an exclusive three-year supplier agreement. (the "Supplier Agreement"). (ECF No. 9-2, Ex. B.) The Supplier Agreement provided CCL would "assist in formulation, development and manufacturing of [Oz]'s existing products." (*Id.* at 9.) The Supplier Agreement also has an arbitration clause which states:

> Any dispute or controversy arising under or relating to this AGREEMENT shall be decided exclusively by impartial arbitration in [CCL]'s county, under the auspices of the American Arbitration

Association (AAA) or such other neutral arbitrator as the parties may select by mutual agreement.

(*Id.* ¶ 14.4.)

On March 11, 2019, CCL—pursuant to the arbitration clauses of the NCA and Supplier Agreement—served a JAMS arbitration demand on Oz including claims of breach of the NCA, Supplier Agreement, and unjust enrichment (the "CCL Arbitration"). (ECF No. 9-2, Ex. C.) On May 31, 2019, Oz filed a response to the CCL Arbitration along with counterclaims against CCL. (ECF No. 9-2, Ex. D.)

On May 21, 2018, Oz filed a six-count Complaint against Levenkron (the "Complaint") asserting claims for breach of the Consultant Agreement (Count One), breach of implied-in-fact contract (Count Two), breach of covenant of good faith and fair dealing (Count Three), money had and received (Count Four), fraudulent misrepresentation (Count Five), and fraudulent concealment (Count Six). (ECF No. 1.) On August 7, 2019, Levenkron filed a Motion to Dismiss or Stay Pending Arbitration. (ECF No. 9.) On August 19, 2019, Oz filed an Opposition to the Motion. (ECF No. 12.) On February 11, 2020, at the direction of the Court, the parties filed a receipt of a final award in the CCL Arbitration. (ECF No. 17.)

## II.   LEGAL STANDARD

"In considering a motion to compel arbitration, a court must engage in a two-step analysis: it must determine first whether there is a valid agreement to arbitrate and, if so, whether the specific dispute falls within the scope of said agreement." *Thomas v. Jenny Craig, Inc.*, No. 10–2287, 2010 WL 3076861, at * 3 (D.N.J. Aug.4, 2010) (citing *Century Indem. Co. v. Certain Underwriters at Lloyd's*, 584 F.3d 513, 523 (3d Cir. 2009); *Salvadori v. Option One Mtg. Corp.*, 420 F. Supp. 2d 349, 356 (D.N.J. 2006)). "In doing so, the Court utilizes the summary judgment standard of Federal

Rule of Civil Procedure 56(c)." *Id.* (citing *Par–Knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd.*, 636 F.2d 51, 54 n.9 (3d Cir. 1980)).

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A factual dispute is genuine only if there is "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party," and it is material only if it has the ability to "affect the outcome of the suit under governing law." *Kaucher v. Cty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255)); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, (1986); *Curley v. Klem*, 298 F.3d 271, 276-77 (3d Cir. 2002). "Summary judgment may not be granted . . . if there is a disagreement over what inferences can be reasonably drawn from the facts even if the facts are undisputed." *Nathanson v. Med. Coll. of Pa.*, 926 F.2d 1368, 1380 (3rd Cir. 1991) (citing *Gans v. Mundy*, 762 F.2d 338, 340 (3d Cir.), *cert. denied*, 474 U.S. 1010 (1985)); *Ideal Dairy Farms, Inc. v. John Labatt, Ltd.*, 90 F.3d 737, 744 (3d Cir. 1996).

"Therefore, a court must first determine whether there is a genuine issue of material fact as to whether a valid arbitration agreement exists." *Jayasundera v. Macy's Logistics & Operations, Dep't of Human Res.*, No. 14-7455, 2015 WL 4623508, at *2 (D.N.J. Aug. 3, 2015). In making this determination, the party opposing arbitration receives "the benefit of all reasonable doubts and

inferences that may arise." *Id.* "In examining whether certain claims fall within the ambit of an arbitration clause, a court must 'focus . . . on the factual allegations in the complaint rather than the legal causes of action asserted.'" *Id.* (quoting *Mutual Ben. Life Ins. Co. v. Zimmerman*, 783 F. Supp. 853, 869 (D.N.J. 1992) (citation omitted)). If the court determines that the claims in dispute fall within the scope of the arbitration agreement, the court must "refer the dispute to arbitration without considering the merits of the case." *Id.*

### III. DECISION

#### A. Motion to Stay or Dismiss

Levenkron contends this matter should be stayed pending the CCL arbitration. (ECF No. 9-1 at 11.) However, that action has been resolved and the Honorable Joseph P. Farina issued final decision on January 29, 2020. (ECF No. 17, Ex. A.) While both parties agree this resolution renders the motion to stay moot, Levenkron contends his Motion to Compel Arbitration remains pending. (ECF Nos. 14 & 15.) Therefore, the Court will address the merits of Defendant's Motion below. Accordingly, Levenkron's Motion to Stay is **DENIED AS MOOT.**

#### B. Motion to Compel Arbitration

Levenkron contends the Complaint should be dismissed and the Court should compel the parties to arbitrate because the claims asserted against him are subject to the arbitration clauses in the CCL Supplier Agreement and the NCA. (ECF No. 9-1 at 14.) Specifically, Levenkron argues the claims against him under the Consulting Agreement "clearly relate" to his subsequent work with CCL and are therefore governed by the arbitration provisions of the CCL Supplier Agreement and the NCA with Oz. (*Id.*)

When it is apparent on the face of the complaint and the documents relied upon in the complaint that certain of a party's claims are subject to an enforceable arbitration clause, a motion

to compel arbitration should be considered under a Fed. R. Civ. P. 12(b)(6) standard. *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 776 (3d Cir. 2013) (quoting *Somerset Consulting, LLC v. United Capital Lenders, LLC*, 832 F. Supp. 2d 474, 482 (E.D. Pa. 2011)). However, if the complaint does not establish on its face that the parties agreed to arbitrate, then the parties should be entitled to discovery on the question of arbitrability before a court entertains further briefing on the question. *Id.* Parties can be compelled to arbitrate claims "only if the claims at issue are within the scope of [their] agreement." *Voorhees v. Tolia*, 761 F. App'x 88, 90 (3d Cir. 2019) (citing *CardioNet, Inc. v. Cigna Health Corp.*, 751 F.3d 165, 172 (3d Cir. 2014)). Indeed, paramount in analyzing a question of arbitrability is the language of the agreement between the parties. *See CardioNet*, 751 F.3d at 171 (finding that when there is a question of whether parties agreed to arbitrate, the Court must first look at the agreement between the parties).

Here, on the face of the Complaint, it is unclear whether the parties agreed to arbitrate. The basis of Oz's claims concern Levenkron's alleged breaches of the Consultant Agreement. (*See generally* ECF No. 1.) However, despite alleging the existence of the Consultant Agreement and contending the Agreement does not contain an arbitration provision, Oz has not attached the agreement to the Complaint or any subsequent moving papers.[1] "Because the question of arbitrability cannot be resolved without considering evidence extraneous to the pleadings, it would be inappropriate to apply a Rule 12(b)(6) standard in deciding the instant motion." *Hejamadi v. Midland Funding, LLC*, No. 18-13203, 2019 U.S. Dist. LEXIS 170791, at *9-10 (D.N.J. Oct. 1, 2019) (quoting *Torres v. Rushmore Serv. Ctr., LLC*, 2018 U.S. Dist. LEXIS 186885, at *2 (D.N.J. Oct. 31, 2018)). Therefore, once the parties have completed limited discovery on the issue of

---

[1] The Complaint states, "[a] true and correct copy of the Consultant Agreement is attached hereto as Exhibit A." (ECF No. 1 ¶ 27.) However, there is no Exhibit attached to the Complaint.

arbitrability, Defendant may renew his motion to compel arbitration. *See Guidotti*, 716 F.3d at 776 ("After limited discovery, the court may entertain a renewed motion to compel arbitration, this time judging the motion under a summary judgment standard.").[2] Accordingly, Levenkron's Motion to Compel Arbitration is **DENIED.**

## IV. CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss or Stay Pending Arbitration is **DENIED AS MOOT** and the Motion to Compel Arbitration is **DENIED.**


Date: March 23, 2020                           */s/ Brian R. Martinotti*_____
                                               **HON. BRIAN R. MARTINOTTI**
                                               **UNITED STATES DISTRICT JUDGE**

---

[2] *See also Hubbard v. Comcast Corp.*, No. 18-16090, 2019 U.S. Dist. LEXIS 111015, at *2 (D.N.J. July 3, 2019) (noting that "courts routinely deny motions to compel arbitration and allow limited discovery on the issue of arbitrability" when the complaint is unclear regarding whether the parties agreed to arbitrate); *Sauberman v. Avis Rent a Car Sys.*, L.L.C., No. 17-0756, 2017 WL 2312359, at *2 (D.N.J. May 26, 2017) ("Because the Complaint does not establish on its face that the parties agreed to arbitrate, the Court cannot decide the present motion without first ordering limited discovery as to the question of arbitrability."); *Nicasio v. Law Offices of Faloni & Assocs., LLC*, No. 16-0474, 2016 WL 7105928, at *2 (D.N.J. Dec. 5, 2016) (ordering limited discovery on the question of arbitrability because "Plaintiffs' Complaint makes no reference to the Agreement; it does not attach the Agreement as an exhibit; and it does not base its FDCPA claim on the existence of the Agreement").